J-S56031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: B.C.T.-S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.S., FATHER | No. 865 MDA 2015 |

Appeal from the Order Entered April 14, 2015
in the Court of Common Pleas of York County
Juvenile Division at No.: CP-67-DP-0000104-2014

BEFORE: SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 27, 2015**

B.S. (Father) appeals from the order of the Court of Common Pleas of York County, filed April 14, 2015, that adjudicated his daughter, B.C.T.-S (Child), born in March of 2010, dependent and committed her to the care and custody of York County Children Youth and Families (YCCYF). We affirm.

YCCYF filed its initial Alleged Dependent Child Petition on May 2, 2014, based on a series of eight referrals in which S.T. (Mother) alleged that Father had abused Child sexually. Each referral was deemed unfounded. The initial dependency hearing convened on May 19, 2014, but was

---

[*] Retired Senior Judge assigned to the Superior Court.

continued by agreement of the parties. The agreement was approved by the trial court:

> The parties before the [c]ourt have reached an agreement under which this matter will be continued for 45 days. The dependency petition will not be withdrawn at this point but be held in limbo while the parents participate in [services].

(N.T. 5/19/14, at 23).

The services referred to by the trial court included the parents signing releases for appropriate evaluations, allowing announced and unannounced visits and inspections by YCCYF; their cooperation in obtaining psychological evaluations; their participation with the Justice Works in-home team; and Child's continuing participation in weekly therapy. (*See id.* at 24).

By the time the hearing reconvened on August 11, 2014, YCCYF had received a ninth referral alleging sexual abuse of Child by Father. That referral prompted YCCYF to file a Motion to Suspend Father's Rights of Custody and Visitation on July 16, 2014. The motion was to be heard at the continued dependency hearing on August 11, 2014. (*See* N.T. 8/11/14, at 1-3). At that hearing, YCCYF requested, and the trial court granted, leave to withdraw the dependency petition filed May 2, 2014. There was a lengthy discourse at the August 11, 2014 proceeding about whether or not YCCYF would be able to meet the clear and convincing evidentiary burden in order to prove dependency because the ninth sexual abuse referral was also deemed unfounded and there was a custody proceeding already on the calendar for August 22, 2014. (*See* N.T. 8/11/15, at 2-6; 24-25; 29-31).

Shortly after the dismissal of the original petition, YCCYF received a tenth referral alleging sexual abuse of Child by Father.

The history of the case and the totality of the circumstances led to YCCYF's filing an application for protective custody on August 28, 2014, seeking removal of Child from the custody of both parents and her placement in foster care. YCCYF filed a second petition for dependency and, at the dependency hearing held on September 11, 2014, all parties agreed that a comprehensive custody evaluation by JoAnn MacGregor, Ph.D., a clinical psychologist licensed in the Commonwealth of Pennsylvania, would assist the trial court in determining whether Child was dependent as defined in the Juvenile Act, 42 Pa.C.S.A. § 6302. (*See* N.T. 9/11/14, at 23).

Dr. MacGregor's written report was shared with all parties in advance of the April 14, 2015 dependency hearing and was entered in the record as Joint Exhibit #2 by stipulation of the parties. Dr. MacGregor also testified by phone at that hearing. In addition to Dr. MacGregor's testimony, testimony was received from mental health therapist and executive director of EquiTeam Support Services, Ellie Williams; intake manager for YCCYF, Rebecca Wilson; Father; and Father's girlfriend, A.K. Mother and Child's Guardian *ad litem* did not testify.[1]

---

[1] Neither Mother nor the Guardian *ad litem* filed briefs in this matter, either, but chose to join in the brief of Appellee YCCYF. *See* Pa.R.A.P. 2147.

The trial court entered its order adjudicating Child dependent and committing her to YCCYF on April 14, 2015. Father filed his notice of appeal and statement of errors complained of on appeal on May 13, 2015. **See** Pa.R.A.P. 1925(a)(2)(i).

Father presents the following question for our review:

Did the [trial court] err as a matter of law and abuse its discretion by granting the request of [YCCYF] for a finding of dependency with respect to Father, B.S. when [YCCYF] failed to prove dependency by clear and convincing evidence as there was insufficient evidence that the child was without proper parental care or control?

(Father's Brief, at 4).

Our Supreme Court set forth our standard of review for dependency cases as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

**In re R.J.T.**, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010) (citation omitted).

To adjudicate a child dependent, a trial court must determine that the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

- 4 -

42 Pa.C.S.A. § 6302.

A dependency hearing is a two-stage process. The first stage requires the trial court to hear evidence on the dependency petition and determine whether the child is dependent pursuant to the standards set forth in section 6302. *See* 42 Pa.C.S.A. § 6341(a). If it finds "clear and convincing" evidence that the child is dependent, the court may move to the second stage, an adjudicatory hearing where it must make an appropriate disposition based on an inquiry into the best interests of the child. 42 Pa.C.S.A. § 6341(c); *In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007). "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

> In reviewing an adjudication of dependency, we are guided by the manifest intent of the legislature in drafting the Juvenile Act, which was to preserve unity of the family whenever possible. 42 Pa.C.S.A. § 6301(b)(1). Consequently, a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. A court may not find a child to be dependent absent clear and convincing evidence. 42 Pa.C.S.A. § 6341(c).

*In Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991) (case citation omitted).

This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is

likely to prevent serious injury to the child." ***C.R.S.***, ***supra*** at 845. (citation omitted).

With regard to when a child should be removed from parental custody, we have stated:

> The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this [C]ourt had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

***In Interest of K.B.***, 419 A.2d 508, 515 (Pa. Super. 1980) (citations omitted). In addition, we have stated, "[I]t is not for this [C]ourt, but for the trial court as factfinder, to determine whether [a child's] removal from her family was clearly necessary." ***In the Interest of S.S.***, 651 A.2d 174, 177 (Pa. Super. 1994).

Preliminarily, we note that Father has waived his argument for his failure to cite any legal authority to support his claim. Father does no more than review the evidence and ask us to reach a different conclusion. "The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) (case citation omitted).

Moreover, Father's argument would not merit relief. Father argues that there is no basis for dependency in this matter because the allegations of abuse were unfounded and he has met all the conditions set forth by Dr.

MacGregor for Child's return to his custody. We agree that the allegations of abuse cannot form the basis of dependency in this case. Nevertheless, Father does not persuade us that he has satisfied Dr. MacGregor's concerns regarding his regaining custody of Child. At the close of the hearing, the trial court found Child to be dependent and cited Dr. MacGregor's expert testimony and opinions as controlling in reaching its conclusion:

> Dr. MacGregor testified that in her opinion the biggest threat to [Child] is dysfunctional co-parenting of [M]other and [F]ather and the need for both of them to stabilize their parenting relationship with [Child] and with each other in front of [Child].

(N.T. 4/14/15, at 147).

The trial court also found that Father had not, and would not, participate in the therapy Dr. MacGregor recommended in her report. In its opinion, the trial court stated:

> A Comprehensive Evaluation was conducted by Dr. JoAnne MacGregor and evidence of said Evaluation was presented at the Dependency Hearing. Dr. MacGregor concludes in the findings of her Evaluation that [Child] "loves both her mother and her father, and she is caught within the horrific situation of having the two people she loves most in this world engage in relentless immature, hostile, and maladaptive behaviors toward each other for as long as she has memories. [Child] is a resilient child and she has not yet developed any psychiatric disorders from having developed within the context of her parents' inexcusable behaviors, however, as [Child] enters into school-age, her risks for developing disorders will increase substantially if her parents are unable to tolerate each other and function as co-parents to a minimally adequate level to prevent child-harming behaviors. (Report at p. 15). As a result, Dr. MacGregor recommended a family therapist to work with [Child], Mother, Father, and any other family members due to the significant level of dysfunction within the family. Dr. MacGregor testified that both Mother and Father have individual characteristics that are contributing or will

contribute to [Child's] difficulties and that both parents need to equally participate in family therapy to work towards changing their parenting behaviors.

At the time of the hearing, Father had not yet participated in any therapy and stated that he will not participate in any therapy unless [Child] is returned to him immediately.

(Trial Court Opinion, 6/04/15, at unnumbered pages 1-2). (one record citation omitted).

The trial court concluded that Father's refusal to participate in therapy unless Child is returned to him immediately, and his lack of personal financial resources to do so, (*see id.* at unnumbered page 2), clearly demonstrate that he has failed to meet the conditions set forth by Dr. MacGregor for Child's return to his custody. This finding is supported by the record. (*See* N.T., 4/14/15, at 103-105).

Our review of the record reveals that there is sufficient evidence to support the trial court's determination that Child "is a dependent child and is lacking proper parental care, control, subsistence, and education, as required by law or other care or control necessary for [Child's] physical, mental and emotional health or morals." (N.T., 4/14/15, at 148).

Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/27/2015</u>